FIRST CITIZENS BANK AND TRUST COMPANY v. CANAL
INSURANCE COMPANY

No. 808SC279

(Filed 4 November 1980)

**Insurance § 77– automobile theft policy – evidence showing property abandoned –
no recovery under policy**

    In an action to recover under an insurance policy for the theft of a tractor and trailer, plaintiff's evidence showed at best a permanent abandonment of the insured property by its owner under circumstances such as to leave the ultimate fate of the property in the realm of pure speculation, and the trial court therefore erred in finding that the property was stolen and in entering judgment for plaintiff.

APPEAL by defendant from *Bruce, Judge.* Judgment entered 8 November 1979 in Superior Court, WAYNE County. Heard in the Court of Appeals 17 September 1980.

Plaintiff bank brought this action to recover the sum of $16,265.00, alleged to be the fair market value of a tractor-trailer owned by Edgar Strickland, on which plaintiff had a lien by virtue of a loan made by plaintiff to Strickland. In its answer, defendant admitted that it had issued a policy of insurance on the tractor-trailer, naming Strickland as the insured and naming plaintiff as the loss payee. The policy included coverage for theft.

The matter was heard by the trial court without a jury. Plaintiff presented three witnesses who testified as to the events surrounding the alleged theft of the tractor-trailer. The insurance policy was introduced. Defendant presented no evidence. The trial court entered judgment for plaintiff, from which defendant has appealed.

*Barnes, Braswell & Haithcock, P.A., by W. Timothy Haithcock, for plaintiff appellee.*

*Dees, Dees, Smith, Powell & Jarrett, by William W. Smith and Michael M. Jones, for defendant appellant.*

WELLS, Judge.

The judgment of the trial court included *inter alia* the following finding of fact: "13. The International tractor and Brown trailer were stolen between February 4, 1977 and April 27, 1977 by an unknown person or persons."

Defendant argues on appeal that the evidence did not support the above quoted finding of fact. We agree. Plaintiff presented the testimony of three witnesses: Strickland, the owner of the truck; Jack Roger Westmoreland, an independent insurance adjuster who investigated the alleged theft for defendant; and Charlie David Bennett, manager of plaintiff's Installment Loan Department in Goldsboro.

Strickland testified that on the 2nd or 3rd of February 1977, he was hauling a load of potatoes from Mars Hill, Maine to Baltimore, Maryland. It was snowing heavily at the time and the temperature was down to about sixty degrees below zero. The truck engine blew up outside of Mars Hill, about two miles from Smith's Truck Stop, at about six or seven o'clock. Strickland called a wrecker and had the unit towed to Smith's Truck Stop where he requested and was given permission to park the

tractor, about fifty or sixty feet from the "shop". Strickland rode with a man in another rig who delivered the potatoes to Baltimore. After unloading the potatoes, they took the trailer to Union 76 Truck Stop on John F. Kennedy turnpike, near Baltimore. From there, Strickland rode with a friend to New York, thence to Bethlehem, Pennsylvania, and then back to Goldsboro, North Carolina. Strickland agreed to pay the man who drove him to Baltimore to deliver the trailer back to Mars Hill, Maine. That man was not identified by Strickland. Neither could Strickland identify the person he talked to at Smith's Truck Stop about leaving the tractor there. Strickland never returned to Smith's Truck Stop to retrieve the unit. Strickland did not testify as to whether he ever reported the loss of the unit to defendant.

Westmoreland testified that he was employed on 21 April 1977 to investigate the loss. He went to Smith's Truck Stop in Mars Hill, Maine, and to Presque Isle, Maine, but he did not find the tractor or the trailer. As a result of his investigation, he recommended that defendant deny the claim. From his investigation, he could not find any evidence of a theft loss.

Bennett testified that he learned of the loss of the tractor-trailer in February of 1977 and reported it to defendant sometime in April 1977. Bennett identified and testified as to a complaint filed by plaintiff in July 1977 in a bankruptcy proceeding instituted by Strickland, in which plaintiff sought to have Strickland's truck loan debt to plaintiff declared non-dischargeable. Plaintiff, in its complaint, alleged that Strickland either knew of the whereabouts of the vehicle or that in the alternative, he had abandoned it. Plaintiff further alleged that Strickland never reported the loss of the vehicle to defendant or to the police.

The policy provision as to theft is as follows: "Coverage D – Theft (Broad Form) To pay for loss or damage to the automobile, hereinafter called loss, caused by theft, larceny, robbery, or pilferage."

This appears to be a case of first impression before our courts. Defendant cites *Auto Co. v. Insurance Co.*, 239 N.C. 416, 80 S.E. 2d 35 (1954) and *Adler v. Insurance Co.*, 280 N.C. 146, 185 S.E. 2d 144 (1971) as being instructive. The facts in *Auto Co.*

show coverage under an automobile theft clause identical to the one in the case now before us. An employee of the plaintiff's was instructed to drive one of plaintiff's cars to a garage for repairs. The employee took a diversionary trip to his home and while on the return trip to plaintiff's place of business had an accident. The employee was charged with and convicted of a violation of G.S. 20-105, which in pertinent part provided that: "[a]ny person who drives or otherwise takes and carries away a vehicle, not his own, without the consent of the owner thereof, and with intent to temporarily deprive said owner of his possession of such vehicle, without intent to steal the same, is guilty of a misdemeanor." Our Supreme Court held that such a taking did not show a felonious taking within the meaning ordinarily connoted by the terms "theft" or "larceny". In the opinion, Justice Johnson restated the common law definition of larceny as follows:

> Larceny, according to the common-law meaning of the term, may be defined as the felonious taking by trespass and carrying away by any person of the goods or personal property of another, without the latter's consent and with the felonious intent permanently to deprive the owner of his property and to convert it to the taker's own use.

*Auto Co. v. Insurance Co., supra,* at 418, 80 S.E. 2d at 37.

We do not find *Auto Co.* apposite here. In *Auto Co.* the taking was only temporary and no intent on the part of the "taker" to deprive the insured of its property was demonstrated. Neither was there any showing in *Auto Co.* of an act, or of acts, of abandonment of the vehicle by the insured.

For different reasons, we find *Adler* inapposite here. *Adler* involved the mysterious disappearance of two diamond rings from the insured's home. Not only was there no evidence of abandonment, but the physical dimensions of the missing items made them susceptible to being mislaid or lost.

We have examined cases from other jurisdictions and have found no case having factual circumstances analogous to those here. What distinguishes this case is the extraordinary behavior of Strickland, the owner of the rig. His testimony shows that he was self-employed and engaged in trucking for a living. He testified that he had been in business for better than twenty

years. He testified that the fair market value of his rig was between twelve and seventeen thousand dollars. Strickland testified that instead of returning with his trailer to Mars Hill where he left his tractor, he turned his trailer over to a total stranger to deliver it to Mars Hill for him. He left the tractor at a truck stop after receiving the "permission" of a total stranger. He could not supply the names of either of these persons. He never returned to Mars Hill to check on his property and never reported its loss to any law enforcement agency or to his insurance carrier. It is clear from the testimony of the witness Bennett that at one time, plaintiff deemed Strickland's story incredible. The only evidence offered by plaintiff bearing directly on the issue of theft was that of Westmoreland, the independent insurance adjuster, who after going to Maine and investigating the alleged theft said "I could not find any evidence of a theft loss."

Plaintiff's evidence, taken in the light most favorable to it, shows at best a permanent abandonment of the insured property by its owner under circumstances such as to leave the ultimate fate of the property in the realm of pure speculation.

We hold that plaintiff's evidence does not raise an inference of theft as the more reasonable hypothesis for the loss of the insured property, and that the evidence does not support the trial judge's disputed finding of fact upon which judgment for plaintiff was predicated. Under such circumstances, the judgment of the trial court cannot stand. *Morse v. Curtis*, 276 N.C. 371, 172 S.E. 2d 495 (1970).

Our holding on the issue of theft makes it unnecessary for us to reach defendant's other assignments of error.

Reversed.

Judges ARNOLD and ERWIN concur.