496 So.2d 847 (1986)
LEASING SERVICE CORPORATION, a Tennessee Corporation, Appellant/Cross-Appellee,
v.
AMERICAN MOTORISTS INSURANCE COMPANY, a Foreign Corporation, and Delphi Builders, Inc., a Florida Corporation, Appellees/Cross-Appellants.
No. 85-1078.
District Court of Appeal of Florida, Fourth District.
September 24, 1986.
Rehearing Denied November 26, 1986.
*848 Michael A. Bienstock, Law Offices of Michael A. Bienstock, Miami, for appellant/cross-appellee.
Guy E. Burnette, Jr., and Carlos R. Diez-Arguelles of Butler, Burnette and Freemon, Tampa, for appellees/cross-appellants.
PER CURIAM.
Leasing Service Corporation (LSC) appeals a directed verdict granted to American Motorists Insurance Company. In January 1981, Delphi Builders leased a wheel loader from LSC. The lease agreement contained the following clause:
Lessee hereby irrevocably appoints Lessor as Lessee's attorney in fact to make claim for, receive payment of, execute and endorse in said Lessee's name, all documents, checks or drafts due and/or payable to Lessee or any other party.
In July 1981, Delphi Builders obtained an insurance policy on the leased equipment and designated LSC as the loss payee. On April 18, 1982, Nick DeRosa, president of Delphi Builders, reported to the Sunrise Police Department that the equipment had been stolen. DeRosa also notified LSC of the theft and LSC then filed a proof of loss with American Motorists Insurance Company. When the insurer refused to pay on the claim, LSC filed suit for breach of insurance contract and foreclosure of its security interest in the policy proceeds as to Delphi Builders. After LSC presented its case to the jury, the insurer moved for a directed verdict. The court granted the motion on four grounds: lack of proof of damages, failure to prove theft, failure to submit to examination under oath, and a determination that the policy had been assigned to the leasing company in contravention *849 of its terms, thus voiding it. This appeal ensued.
We reverse. Initially, we direct our attention to the validity of the insurance policy. As a special condition, the policy provided that it would be void if assigned or transferred without the written consent of the insurance company. The lease agreement, which LSC and Delphi Builders had executed some six months prior to obtaining the insurance policy, contained the assignment clause set forth above. The trial court determined that this was a prohibited assignment without consent from the insurer and that the policy was therefore void. On appeal, LSC argues that it brought this action as a loss payee named in an insurance policy and as a third party beneficiary of the insurance contract. It characterizes the clause as an appointment to make a claim for policy proceeds. There is no specific reference to any insurance policy in the clause nor is the term "assignment" used. The lease clause which was in effect when the insurer agreed to insure the wheel loader merely recognizes LSC's right to collect insurance proceeds, a right already recognized by the insurer in its "loss payable" clause:
Loss, if any, to be adjusted only with the insured named herein and payable to the insured and LEASING SERVICE CORP., P.O. Box 6, 303 Semoran Blvd., # 210 Altamonte Springs, Fl 32701 as their respective interest may appear, subject, nevertheless, to all the terms and conditions of the policy.
In Ran Investments, Inc. v. Indiana Insurance Company, 379 So.2d 991 (Fla. 4th DCA 1980), we held that a loss payable clause which was part of an insurance policy represented a promise by the insurance company to pay the loss payee and that this promise could be enforced by the loss payee as a third party beneficiary even though it possessed no policy in its own name. That case involved an owner/lessor of property which had an agreement with its lessee that the lessee would obtain hazard insurance on the property. The insurance policy contained a clause naming the owner's mortgagee as loss payee. The property was damaged by fire, but the insurance company refused to pay, and the mortgagee refused to pursue legal action against the insurance company. The owner/mortgagor then brought suit as a third party beneficiary to enforce a promise by the insurer to pay its mortgagee to the extent of the mortgagee's loss as its interests appear. In holding that the owner could state a cause of action as a third party beneficiary, we aligned ourselves with the Third District Court of Appeal's decision in Schlehuber v Norfolk & Dedham Mutual Fire Insurance Co., 281 So.2d 373 (Fla.3d DCA), cert. denied, 288 So.2d 259 (Fla. 1973), appeal after remand, 327 So.2d 891 (Fla. 3d DCA 1976), which involved a similar situation. The case before us is stronger than either of the two aforementioned cases because here the third party beneficiary is named in the insurance policy as the loss payee. We hold that the policy is not void and that LSC has standing to sue for the proceeds as a third party beneficiary of the insurance policy.
Before addressing ourselves to the remaining three grounds for granting the directed verdict, we note that both the trial court and the appellate court must view the evidence in a light most favorable to the non-moving party, resolving every conflict and inference in favor of that party. Ligman v. Tardiff, 466 So.2d 1125 (Fla. 3d DCA), petition for review denied, 478 So.2d 54 (Fla. 1985). On the issue of damages, the trial court determined that there was a total lack of proof of damages in this case. LSC maintains that there was a range of values introduced into evidence during the trial which provided the jury with the basis upon which to render a decision. The proof of loss form filed by LSC lists the full replacement costs and actual cash value at the time of loss at $71,000. At trial, LSC's expert witness testified that the wheel loader was worth between $40,000 and $50,000 at the time of theft. This testimony was stricken at the behest of the insurance company because the expert could not value the equipment as of the *850 date of theft. Since a thief is not in the practice of informing his victim of the date of a theft, the insurance company apparently believes that a daily appraisal of the value of an object is necessary in order to prove its value at the time of loss. We disagree and hold that sufficient evidence was presented to the jury to avoid a directed verdict on the issue of damages.
The trial court found that LSC did not prove that the equipment has been stolen. The insurance policy excludes coverage for "unexplained loss, loss resulting from mysterious disappearance, or loss or shortage disclosed upon taking inventory." The trial court held that the evidence presented by LSC reflected an unexplained loss or mysterious disappearance and thus coverage was not available. The deposition of Nick DeRosa, president of Delphi Builders, was presented to the jury. Although he testified that he had no proof that the equipment was stolen, he also stated that he had been advised by his job foreman that the equipment had been delivered to the site, and when he went to the site the equipment was not there. He made a thorough search and reported it stolen to the police and his insurance agency. A directed verdict is appropriate on the issue of theft when only speculation and conjecture are placed before the jury. Travelers Indemnity Company v. Universal Time, Inc., 430 So.2d 987 (Fla. 3d DCA 1983). In that case a suitcase of watches disappeared. The court held that an insured must present sufficient direct or circumstantial evidence that it is probable that the property was in fact stolen. A mere showing that the property has disappeared is not sufficient to establish a theft. The Travelers court cited to Adler v. Lumber Mutual Fire Insurance Company, 10 N.C. App. 720, 179 S.E.2d. 786, cert. granted, 278 N.C. 521, 180 S.E.2d 863, affirmed, 280 N.C. 146, 185 S.E.2d 144 (1971), which involved the disappearance of a diamond ring from a dish on a bedroom window:
This evidence shows a mysterious disappearance and nothing more. The mere possibility of theft would not alone justify a jury in inferring theft as "the more rational hypothesis" for the plaintiff's loss. Rather, the absence of any suspicious circumstances pointing toward theft, other than the mere disappearance of the rings, suggests with equal logic that a theft did not in fact occur.
We are not dealing here with a watch or a ring which can be easily lost or misplaced. A wheel loader is 10 feet tall and longer than a pickup truck and can be removed only on a flatbed trailer. One simply does not lose or misplace a wheel loader. Indeed, there is no question that theft is the more rational hypothesis here. We hold that sufficient evidence was presented to create a question of fact for the jury, and thus the trial court erred in directing a verdict on this ground.
As its final ground for directing a verdict, the trial court held that the evidence established a deliberate and willful refusal or failure to submit to an examination under oath, thus voiding the policy. The policy contained a clause requiring the insured to submit to examinations under oath by any person named by the insurance company. The insurance company asserts that it requested Delphi Builders to submit to an examination under oath on several occasions. DeRosa testified that he did not remember a request for an examination. While the insurance company maintains that DeRosa has never submitted to an examination under oath, his deposition given under oath was read at trial. Furthermore, DeRosa testified that he gave his statement to the insurance investigator for the company. An insurer may not avoid liability under its policy by merely showing the violation of a clause requiring "assistance and cooperation" of the insured without a further showing of how this violation prejudiced the insurer. In order to avoid liability for such a violation, an insurance company must show that the lack of cooperation was material and that this lack of cooperation substantially prejudiced the insurer. American Fire & Casualty Company v. Collura, 163 So.2d 784 (Fla. 2d DCA), cert. denied, 171 So.2d 389 (Fla. 1964). The failure of the insured to cooperate *851 and the prejudice to the insurance company derived from this failure are questions of fact for the jury, thus negating a directed verdict on the issue.
We note that the insurance company filed a cross-appeal requesting attorney's fees under section 57.105, Florida Statutes (1985). By virtue of our decision today, the cross-appeal is denied.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
LETTS, WALDEN and GUNTHER, JJ., concur.